**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 41**

Docket No. DA-0752-15-0171-I-1

**Christopher L. Elder,**

**Appellant,**

**v.**

**Department of the Air Force,**

**Agency.**

November 22, 2016

Christopher L. Elder, Norman, Oklahoma, pro se.

Preston L. Mitchell, Esquire, and Telin W. Ozier, Esquire, Tinker Air
    Force Base, Oklahoma, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal and granted corrective action. For the reasons discussed below, we DENY the agency's petition for review and AFFIRM the initial decision as MODIFIED to analyze the appellant's affirmative defense of reprisal for protected activity under *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 12-14 (2015).

BACKGROUND

¶2      The appellant was employed by the agency as an Electrician. Initial Appeal File (IAF), Tab 4 at 18. The agency removed him, effective May 17, 2013, for alleged use of offensive language and tardiness. *Elder v. Department of the Air Force*, MSPB Docket No. DA-0752-13-0480-I-1, Initial Appeal File (0480 IAF), Tab 9 at 17-24. He appealed his removal, raising a claim of retaliation for whistleblowing, and the parties settled that appeal with an agreement providing that the appellant would be reinstated, the removal action would be canceled, and he would serve a 90-day suspension. IAF, Tab 4 at 28-30. The administrative judge entered the agreement into the record for enforcement by the Board. 0480 IAF, Tab 18, Initial Decision.

¶3      However, in connection with the back pay that resulted from the agreement, the agency failed to provide the appellant with the opportunity to elect whether to reinstate his health benefits retroactively. *Elder v. Department of the Air Force*, MSPB Docket No. DA-0752-13-0480-C-1, Compliance Appeal File (0480 C-1 AF), Tab 9 at 5, Tab 12, Compliance Initial Decision (0480 C-1 CID) at 4-6. Because of this failure, the appellant was incorrectly assessed a debt for unpaid health benefits premiums, and the Defense Finance and Accounting Service (DFAS) began deducting from his salary to repay this debt. 0480 C-1 AF, Tab 1 at 3, Tab 9 at 5, 8-9, 15-16; 0480 C-1 CID at 4-6. The appellant subsequently filed a petition for enforcement when the problems were not corrected. 0480 C-1 AF, Tab 1. The administrative judge granted the petition, finding that the agency was not in compliance with the agreement's provisions relating to back pay. 0480 C-1 CID at 1, 6.

¶4      Because the agency continued to collect from the appellant's salary to repay a debt for unpaid health benefits premiums, the appellant filed a second petition for enforcement. *Elder v. Department of the Air Force*, MSPB Docket No. DA-0752-13-0480-C-2, Compliance Appeal File (0480 C-2 AF), Tab 1, Tab 12, Compliance Initial Decision (0480 C-2 CID) at 2, 4-5. While the

appellant's petition was pending, the agency's representative and the appellant met in the agency's Legal Office on October 22, 2014, for a telephonic conference with a representative from DFAS to discuss the compliance issues. IAF, Tab 9 at 16, 54. The appellant advised his supervisor, G.W., of this meeting in advance. *Id.* at 45. During the conference, the appellant became frustrated because he believed that the back pay problems were not adequately addressed by DFAS or the agency's representative. *Id.*

¶5　　　Following the meeting, the appellant left the Legal Office and returned to his desk, where he continued to try to work with the Legal Office and DFAS to reach a solution. *Id.* at 16, 36, 45, 54. He twice called the Legal Office asking to know the name and contact information of the second-level supervisor of the agency's representative. *Id.* at 54. Because the agency disconnected the calls, he returned to the Legal Office lobby. *Id.* at 16, 19, 22, 25, 28, 54. There, he requested the same information. *Id.* at 54. After the appellant spoke with a number of agency employees, the Staff Judge Advocate (SJA) instructed the appellant to leave, and he did so. *Id.* at 19, 22, 25, 54. He then returned, requested the name of the SJA from a Legal Clerk at the front desk, and left again. IAF, Tab 4 at 25, Tab 9 at 31. Because he was in the Legal Office from approximately noon to 1:30 p.m., he was not at his duty station during this period. IAF, Tab 9 at 36, 45.

¶6　　　The previous day, on October 21, 2014, the appellant had a disagreement with a Section Chief at his worksite. *Id.* at 33, 51. The appellant heard the Section Chief discussing a problem with another electrician and attempted to offer a solution. *Id.* After a brief discussion, the Section Chief told the appellant that he did not appreciate his tone of voice. *Id.* The appellant left, then returned and told the Section Chief that he "hope[d] he [did] not need [the appellant's] opinion in the future. With the way he treated [the appellant] he [would] not get it." *Id.* at 51.

¶7        On October 27, 2014, G.W. presented the appellant with three separate Discussions of Incident or Delinquency, on Air Force (AF) Form 971s, regarding the events of October 21 and 22, 2014. *Id.* at 44, 48, 50, 53. On October 28, 2014, G.W. was not available at the beginning of the appellant's shift. *Id.* at 36-37, 48. Therefore, the appellant informed his Work Leader that he would be "out of pocket for most of the day . . . formulating [his] responses" to the AF Form 971s. *Id.* Subsequently, the appellant was not at his duty station for approximately 5 hours that day. *Id.* at 47.

¶8        On November 18, 2014, the agency proposed the appellant's removal based on charges of (1) leaving the job site without permission/unauthorized absence and (2) inappropriate conduct. IAF, Tab 4 at 24-26. Regarding the charge of leaving the job site without permission/unauthorized absence, the agency alleged that the appellant was absent from his worksite for 1.5 hours on October 22, 2014, and for 5 hours on October 28, 2014, and his "whereabouts could not be accounted for." *Id*. at 24. Regarding the inappropriate conduct charge, the agency alleged that the appellant acted inappropriately during the incidents on October 21, 2014, with the Section Chief, and on October 22, 2014, in the Legal Office lobby. *Id*. at 25-26. The appellant responded in writing to the proposal notice. IAF, Tab 9 at 61-62.

¶9        On December 17, 2014, the administrative judge issued an initial decision granting the appellant's second petition for enforcement of the settlement agreement in his prior Board appeal. 0480 C-2 CID. She found that the agency still was not in compliance with the Board's final decision. *Id.* at 2, 5. One day later, in a decision letter dated December 18, 2014, the agency removed the appellant, effective December 19, 2014. IAF, Tab 4 at 20-22. The appellant filed this appeal, disputing the basis for his removal and alleging that it was in reprisal for his prior Board appeal. IAF, Tab 1 at 4-5.

¶10       The Board's regional office docketed the appeal, and an administrative judge issued an acknowledgment order. IAF, Tab 2. The order stated, in

pertinent part, that within 20 calendar days the agency was to provide "all . . . documents . . . which are relevant and material to this appeal" and any other information required by 5 C.F.R. § 1201.25. IAF, Tab 2 at 6, 8. The agency's responsive pleading contained only the following documents directly relevant to the charges: the settlement agreement of the appellant's prior appeal, the proposal notice, the decision letter, and the Standard Form 50 (SF-50) implementing the appellant's removal. IAF, Tab 4.

¶11    Because the appellant did not request a hearing, the administrative judge issued an order providing the parties with deadlines for final written submissions. IAF, Tab 1, Tab 5 at 1, Tab 8. She advised the agency that because it failed to comply with the acknowledgment order when it did not furnish any evidence in support of its charges, any submission of such evidence would require a showing that the evidence was not previously available. IAF, Tab 8 at 2.

¶12    On April 30, 2015, the day before the record closed on appeal, the agency submitted 9 sworn statements, all signed on April 28 or 29, 2015, more than 5 months after the date of the proposal notice, and more than 3 months after the acknowledgment order was issued. IAF, Tab 9. The agency also submitted copies of the AF Form 971s relevant to the incidents underlying the appellant's removal. *Id.* In addition, the agency provided the appellant's responses to the AF Form 971s, his written response to the proposal notice, and a written summary of the deciding official's *Douglas* factors penalty considerations. *Id.*; *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (providing a nonexhaustive list of factors relevant to determining the appropriateness of a penalty for misconduct). However, the agency failed to provide any explanation as to why these documents were not submitted earlier in compliance with the instructions in the acknowledgment order. IAF, Tab 9 at 4-7. Instead, it argued that the documents were relevant hearsay evidence. *Id.* at 5.

¶13    Despite the agency's failure to explain its late submission of this evidence, the administrative judge considered it. IAF, Tab 14, Initial Decision (ID) at 5.

She issued an initial decision reversing the removal and finding that the agency retaliated against the appellant for his prior Board activity under 5 U.S.C. § 2302(b)(9).  ID at 1, 16-18.

¶14    As to charge 1, the administrative judge found that the appellant had informed his supervisors that he would be absent for work-related business on October 22 and 28, 2014.  ID at 5-8.  Therefore, she did not sustain the charge.  ID at 8.  She also did not sustain charge 2.  ID at 8-16.  Concerning the appellant's exchange with the Section Chief on October 21, 2014, the administrative judge credited the appellant's denial that he was loud and demonstrative, as charged, over the description of the incident provided by the Section Chief.  ID at 10.  As to the appellant's behavior in the Legal Office lobby on October 22, 2014, she found that the agency failed to prove that the appellant behaved inappropriately under the circumstances.  ID at 15-16.  In making her findings regarding the second charge, the administrative judge generally gave less weight to the agency's statements than the appellant's statement, which was completed shortly after the incident.  ID at 8-16.  In so doing, she considered a number of factors, including the fact that the agency's statements were submitted long after the events in question.  ID at 10-11, 14-15.

¶15    The administrative judge granted corrective action on the appellant's affirmative defense of reprisal for protected activity, i.e., appealing his prior removal and filing two petitions for enforcement.  ID at 16-18.  In so doing, she applied the standard set forth in *Warren v. Department of the Army*, 804 F.2d 654, 656-58 (Fed. Cir. 1986), *superseded in part by statute as stated in Alarid*, 122 M.S.P.R. 600, ¶ 15.[1]  ID at 16.  She determined that it was more likely true

---

[1] Under *Warren*, for an appellant to prevail on a contention of illegal retaliation, he has the burden of showing that: (1) a protected disclosure was made; (2) the accused official knew of the disclosure; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the alleged retaliation and the adverse action.  *Warren*, 804 F.2d at 656-58.

than untrue that, but for the appellant's prior protected activity, he would not have been removed.[2]  ID at 18.

¶16    The agency has filed a petition for review, primarily challenging the weight the administrative judge gave to the evidence and her credibility determinations. Petition for Review (PFR) File, Tab 1.  The appellant has responded to the petition for review, and the agency has replied.  PFR File, Tabs 3, 5.

¶17    In addition, the appellant has filed a petition for enforcement of the initial decision's interim relief order.  PFR File, Tab 6.  The agency has replied to the petition for enforcement, and the appellant has responded.  PFR File, Tabs 7-8.

## ANALYSIS

### We decline to dismiss the petition for review based on the agency's noncompliance with the order for interim relief.

¶18    When, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment.  *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 6 (2015); 5 C.F.R. § 1201.116(a); *see* 5 U.S.C. § 7701(b)(2)(A)(ii).  However, if an agency makes a determination that an employee will pose an undue disruption, it nonetheless must return the employee to a pay status pending the outcome of its petition for review.  5 U.S.C. § 7701(b)(2)(B); *Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 9 (2013).

---

[2] The administrative judge also indicated that the deciding official did not consider any mitigating circumstances.  ID at 18.  In context, we interpret her statement as reflecting a valid concern that the deciding official essentially discounted the unusual job tensions caused by the agency's continued failure to resolve the back pay issues arising out of the settlement agreement of the appellant's prior removal appeal.  IAF, Tab 9 at 65.

¶19    With its petition for review, the agency stated that it returned the appellant to work, although it temporarily reassigned him to another position based on its determination that returning him to his assigned position would be unduly disruptive.  PFR File, Tab 1 at 4, Tab 7 at 9.  In his petition for enforcement, the appellant does not challenge his temporary work assignment, but contends that he has not been properly paid since returning to work.  PFR File, Tab 6.  Although the agency admits that the appellant's pay was initially delayed, it has provided evidence that he has since been paid.  PFR File, Tab 7 at 5-8.  In reply, the appellant argues that his pay should have begun on the day the initial decision was issued, his rate of pay is too low, and he has "not been counseled on health insurance or [the Thrift Savings Plan]."  PFR File, Tab 8 at 4-5.

¶20    The appellant's petition for enforcement is denied because the Board's regulations do not allow for a petition for enforcement of an interim relief order.  *Ayers*, 123 M.S.P.R. 11, ¶ 7; *see* 5 C.F.R. § 1201.182(a)-(b).  We may instead consider the appellant's pleading as a challenge to the agency's certification of compliance.  5 C.F.R. § 1201.116(b).  Ordinarily, when an appellant challenges the agency's certification of compliance with an interim relief order, the Board will issue an order affording the agency the opportunity to submit evidence of compliance.  *Id.*  If the agency fails to provide evidence of compliance in response to such an order, the Board may, at its discretion, dismiss the agency's petition for review.  5 C.F.R. § 1201.116(e).  In this case, however, we find that the agency's petition does not meet the criteria for review in any event, and the issuance of our final decision renders moot any dispute concerning the agency's compliance with the interim relief order.  *See Ayers*, 123 M.S.P.R. 11, ¶ 8 (reaching the same conclusion where the Board affirmed the administrative judge's reversal of the appellant's removal based on whistleblower reprisal).  If the appellant believes that the agency is in noncompliance with the Board's final order, he may file a petition for enforcement in accordance with the instructions provided below.  *See id.*

<u>The administrative judge properly found that the agency failed to prove its charges.</u>

¶21    In disputing the administrative judge's findings regarding the charges, the agency primarily disagrees with the weight she gave to its evidence. *E.g.*, PFR File, Tab 1 at 10-11, 13, 16. If, as here, an administrative judge's findings are not based on the observation of witnesses' demeanor, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues. *Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002). We have reviewed the record evidence, but nonetheless find that the administrative judge properly weighed the evidence.

¶22    Because no hearing was held, the administrative judge applied the relevant factors in weighing the parties' hearsay evidence. ID at 4-5; *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981) (listing the following factors as affecting the weight to be accorded to hearsay evidence: (1) the availability of persons with firsthand knowledge to testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form, and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether the declarants were disinterested witnesses to the events, and whether the statements were routinely made; (5) the consistency of the declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of the declarant when he made the statement attributed to him). The agency asserts that the administrative judge erred when she did not give greater weight to the statements it included with its April 30, 2015 close-of-record submission than to the appellant's statements. PFR File, Tab 1 at 13. It argues that its witness statements are entitled to this weight because they are sworn, internally

consistent, and consistent with the AF Form 971s.[3]  *Id.*  However, the appellant, like the agency, submitted a sworn statement with his close-of-record submission.  IAF, Tab 11 at 3-5.  Further, his sworn close-of-record statement was consistent with his prior statements, including his responses to the AF Form 971s.  IAF, Tab 9 at 45, 48, 51, 54, 61-62.  Therefore, we are not persuaded that the agency's statements are entitled to greater weight.

¶23        The agency next argues that the administrative judge erred in finding that it did not comply with the acknowledgment order, and as a result incorrectly gave "virtually no weight" to the witness statements submitted by the agency on April 30, 2015.  PFR File, Tab 1 at 10, 12, 16.  The administrative judge found that the agency failed to comply with the acknowledgment order because it did not submit all documents relevant and material to the appeal.  ID at 3.  The agency claims that the acknowledgment order contained "no such order!"  PFR File, Tab 1 at 11 (emphasis in original).  We disagree.  The acknowledgment order required the agency to submit such evidence within 20 days.  IAF, Tab 2 at 6, 8.  Further, the Board's regulations similarly mandate that an agency submit all documents contained in its record of the action within 20 days of the docketing of an appeal.  5 C.F.R. §§ 1201.22(b), .25(c).

¶24        Notwithstanding the agency's failure to timely submit this evidence, and its failure to comply with the administrative judge's order to show that any new evidence was not previously available, the administrative judge considered the agency's April 30, 2015 close-of-record submission.  IAF, Tab 8 at 2, Tab 9

---

[3] The administrative judge found that the accuracy of the statement of one agency witness was questionable because, in part, it was internally inconsistent and inconsistent with the statement of another agency witness.  ID at 14; IAF, Tab 9 at 19, 22.  For the first time in its reply to the appellant's response to the petition for review, the agency disputes this finding.  PFR File, Tab 5 at 11-12.  We decline to consider this argument, as well as others that the agency raises for the first time in its reply.  *See* 5 C.F.R. § 1201.114(a)(4) (limiting a reply to a response to a petition for review to the factual and legal issues raised in the response).

at 4-7; ID at 3-5. She assigned statements from agency witnesses less weight than that of the appellant's contemporaneous responses to the AF Form 971s. ID at 9-10, 14. We find assigning greater weight to the appellant's statements because they were completed closer in time to the events in question was appropriate. *See United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948) (finding that testimony that conflicted with contemporaneous documents was entitled to "little weight").

¶25    The agency also argues that the administrative judge was required to credit the agency's statements because they were completed by disinterested witnesses. PFR File, Tab 1 at 13, 17. We disagree. To resolve credibility issues, an administrative judge must consider relevant factors, which include a witness's bias or lack of bias. *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (listing these and other factors to be considered). However, the Board will not discredit an appellant's testimony solely because it can be characterized as self-serving. *See Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 25 (2015) (observing that most testimony that an appellant is likely to give can be characterized as self-serving and finding that it is improper to discredit it solely on that basis). Further, we decline to find that other witnesses, such as the appellant's supervisor, the deciding official, and staff from the agency's Legal Office, had no interest in the outcome of the appeal. *See id.* (observing that a supervisor who proposed an appellant's removal may have an interest in the outcome of the resulting Board appeal). All of these individuals would, for different reasons, have an interest in ensuring the agency's success in this appeal.

¶26    We also are not persuaded that the administrative judge should have found the appellant less than credible because his submissions allegedly contain "an obvious falsehood . . . that there was an oral agreement in his previous appeal." PFR File, Tab 1 at 9, 13. Assuming, without deciding, that the appellant's representation regarding an oral agreement was incorrect, we decline to infer that any error was deliberate. The appellant was, and remains, pro se. IAF, Tab 1

at 4. He references an oral agreement reached during "settlement talks with [the administrative judge]" that his "previous record . . . would be cleared." IAF, Tab 11 at 4. His statements appear to reflect, at most, a misunderstanding regarding the settlement process. We find that they do not justify an inference of dishonesty.

¶27     The agency has the burden of proving its charges by preponderant evidence. 5 C.F.R. § 1201.56(b)(1)(ii). As discussed below, we affirm the administrative judge's finding that the agency failed to prove its charges.

*Charge 1: Leaving the job site without permission/unauthorized absence*

¶28     To prove a charge of unauthorized absence, the agency must demonstrate that the employee was absent and that his absence was unauthorized or that his request for leave was properly denied.[4] *Smith v. Department of the Interior*, 112 M.S.P.R. 173, ¶ 9 (2009). The following findings are not disputed. During the 1.5 hours that the appellant was allegedly absent without authorization on October 22, 2014, he was in the lobby of the Legal Office attempting to address the back pay issues that arose from the settlement agreement in his prior appeal. ID at 6-7; IAF, Tab 9 at 36, 45, 61. In addition, G.W. previously had granted the appellant permission to meet with the Legal Office that day. ID at 6-7; IAF, Tab 9 at 36, 45. Further, during the 5 hours the appellant allegedly was absent on October 28, 2014, he was responding to the AF Form 971s that G.W. presented to him the previous day. ID at 7; IAF, Tab 9 at 36, 48. In G.W.'s absence that

---

[4] We find that the charge of leaving the job site without permission merges with the unauthorized absence charge, and therefore we will not separately address it. *See Hawes v. Office of Personnel Management*, 122 M.S.P.R. 341, ¶ 6 (2015) (finding that an administrative judge appropriately merged charges based on the same set of underlying facts); *McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 4 n.3 (2014) (finding that an administrative judge properly merged specific absences that were listed under both an absence without leave charge and a charge of failure to follow leave restriction letter procedures).

morning, the appellant advised his Work Leader in advance that he would be responding to the AF Form 971s. ID at 6-7; IAF, Tab 9 at 36-37, 48.

¶29    However, the agency disputes that the appellant's activities were authorized. PFR File, Tab 1 at 16. In this regard, it argues that the administrative judge required the agency to prove the existence of a procedure requiring advance permission for "duty time" or "official time." *Id.* at 14-15. It argues that, in any event, it established the existence of an unwritten policy through its table of penalties, G.W.'s statement, the AF Form 971s, and the appellant's prior discipline. *Id.* at 15-16.

¶30    We disagree with the agency that the administrative judge found that it was required to prove the existence of an official time procedure. Instead, she properly considered the lack of a written procedure in weighing the evidence. ID at 6-7; *see Borninkhof*, 5 M.S.P.R. at 87. As she observed, the absence of a written procedure weighed against the agency's claim that the appellant was required to make a second request for official time after returning to his worksite on October 22, 2014, and before returning to the Legal Office lobby. ID at 6. It also weighed against the agency's claim that the appellant's Work Leader could not approve the appellant's request for official time on October 28, 2014.[5] ID at 7.

¶31    The documents that the agency cites on review support the conclusion that approval is required for leaving the jobsite and for official time. PFR File, Tab 1 at 15-16; IAF, Tab 4 at 44, Tab 9 at 44, 47. However, other than G.W.'s late-submitted statement, the weight of which we already have addressed above,

---

[5] The agency argues that the administrative judge erred in considering its attendance policy regarding unscheduled leave. PFR File, Tab 1 at 4; ID at 7-8. We find that she appropriately weighed the appellant's compliance with this policy on October 28, 2014, as evidence supporting the appellant's claim that he properly advised his Work Leader that he would be working on his responses to the AF Form 971s on that day. *Id.*; IAF, Tab 11 at 7; *see Borninkhof*, 5 M.S.P.R. at 87.

they do not establish that the manner in which the appellant requested permission on October 22 and 28, 2014, was improper.  IAF, Tab 4 at 44, Tab 9 at 44, 47.

¶32        Therefore, we agree with the administrative judge that the agency failed to prove that the appellant's alleged absences on October 22 and 28, 2014, were unauthorized.   As a result, we also agree that the agency did not prove its unauthorized absence charge.  Additionally, although the agency claims that the administrative judge incorrectly remembered her prior findings regarding its noncompliance, we do not agree.

*Charge 2:  Inappropriate conduct*

¶33        In finding that the agency failed to prove that the appellant engaged in inappropriate conduct on October 21, 2014, during an exchange with the Section Chief, the administrative judge gave greater weight to the appellant's statement completed a week after the incident than the Section Chief's statement completed 6 months later.  IAF, Tab 9 at 33, 51.   Although the agency argues that the Section Chief was a disinterested coworker, it provides no first-hand evidence to support this claim.[6]   PFR File, Tab 1 at 16.  In addition, as the administrative judge found, the agency failed to provide a statement from the electrician who was present during the incident.  ID at 10; IAF, Tab 4 at 24.  Therefore, we find that the administrative judge appropriately weighed the evidence.  *Borninkhof*, 5 M.S.P.R. at 87.

¶34        The administrative judge also found that the agency failed to prove that the appellant engaged in inappropriate conduct during the October 22, 2014 incident in the Legal Office lobby.  ID at 10-16.  Instead, she found that the appellant,

---

[6] In a subsequent submission on review, the agency provided a statement from the deciding official that the Section Chief was not in the appellant's chain of command, had no interest in his removal, and "no reason to malign" the appellant.  PFR File, Tab 11 at 20.   However, the Section Chief did not explain his relationship to the appellant in his statement on appeal.  IAF, Tab 9 at 33.

although frustrated by the agency's continued noncompliance with the settlement agreement reached in his prior appeal, credibly explained that he was calm and was only seeking information related to the ongoing compliance issues. ID at 13-14; IAF, Tab 9 at 54, 61.

¶35 The agency argues that the administrative judge's findings were "tainted by her erroneous recollection of the appellant's prior case." PFR File, Tab 1 at 10. Specifically, the agency argues that the administrative judge's recitation of the facts was inaccurate when she found that the agency did not comply with the settlement of the appellant's prior Board appeal because it did not complete a DFAS checklist. *Id.* The agency further contends that the administrative judge erred by stating that there was a finding of agency noncompliance with the settlement agreement. *Id.*

¶36 As the agency observes, in the initial decision in the instant appeal, the administrative judge described the agency's noncompliance that led to the October 22, 2014 meeting as arising out of its failure to complete a DFAS checklist. ID at 2. This was in error because there was no DFAS checklist attached to the initial decision in the appellant's prior appeal. 0480 IAF, Tab 18, Initial Decision. However, we find that the administrative judge's alleged error does not provide a basis for granting review. Although the Board may grant a petition for review based on a factual error, such error must be material. 5 C.F.R. § 1201.115(a)(1). A material error is one that is of sufficient weight to warrant an outcome different from that of the initial decision. *Id.*

¶37 Contrary to the agency's claims that "there was . . . no finding that the agency was not in compliance with the agreement," the administrative judge granted the appellant's petition for enforcement of the settlement agreement in his prior appeal due to the agency's erroneous withholding of health benefits premiums from his back pay. 0480 C-1 CID at 4-6; PFR, Tab 1 at 7. In addition, at the time of the appellant's conference in the Legal Office on October 22, 2014, DFAS was continuing to collect for a debt related to health benefits premiums,

but was unable to provide an understandable explanation of this debt. 0480 C-2 AF, Tab 1; 0480 C-2 CID at 4-5; IAF, Tab 9 at 54.

¶38    In any event, the administrative judge's finding that the agency failed to prove the alleged misconduct on October 22, 2014, was based on her determination that the appellant's statement regarding the incident was credible. ID at 14. It was not based on her finding of the agency's noncompliance with the settlement agreement in the prior appeal.

We affirm the finding that the agency retaliated against the appellant for his prior Board appeals, as modified to apply the proper standard.

¶39    In its petition for review, the agency did not challenge the administrative judge's determination that the agency's removal action was retaliation for protected activity. Nevertheless, we found that the administrative judge relied on the burden of proof set forth in *Warren*, 804 F.2d at 656-58, in both the order and summary of the close-of-record conference and the initial decision. IAF, Tab 8 at 2; ID at 16. The *Warren*[7] standard is inapplicable to claims, like the one here, that allege reprisal for filing a prior Board appeal under 5 U.S.C. § 2302(b)(9)(A)(i).[8] *See* 5 U.S.C. § 1221(e); *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 10 (2016) (finding that a retaliation claim arising under section 2302(b)(9)(A)(i) should be analyzed under section 1221(e), rather than a general reprisal standard). Instead, the reprisal claim must be analyzed under the burden-shifting standards set forth in section 1221(e). *Alarid*, 122 M.S.P.R. 600,

---

[7] Although *Warren* has not been overruled by the U.S. Court of Appeals for the Federal Circuit, the statutory changes of the Whistleblower Protection Enhancement Act of 2012 significantly narrow the scope of cases to which it applies. *Alarid*, 122 M.S.P.R. 600, ¶ 15.

[8] Section 2302(b)(9)(A)(i) prohibits retaliation for various protected activity including, among other things, filing a Board appeal "with regard to remedying a violation of [section 2302(b)(8)]," i.e., it prohibits retaliation for filing a Board appeal in which a claim of whistleblower retaliation was raised under 5 U.S.C. § 2302(b)(8).

¶ 12. In such cases, the appellant first must establish by preponderant evidence that he engaged in protected activity that was a contributing factor in the personnel action at issue. *Id.*, ¶¶ 13-14. If he does so, the burden of persuasion shifts to the agency to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity. *Id.*, ¶ 14.

¶40    Here, because the appellant raised a claim that the agency's removal action was in retaliation for the filing of his prior Board appeal, which included a whistleblower retaliation claim under 5 U.S.C. § 2302(b)(8), and his filing of two separate petitions for enforcement with the Board, the proper analysis of this claim is as a prohibited personnel practice under section 2302(b)(9)(A)(i). IAF, Tab 8 at 1, Tab 11 at 4. Accordingly, we find that the administrative judge should have apprised the parties of the burdens of proof under section 1221(e). While the case was pending on review, we issued an order to the parties setting forth the proper standards for analyzing the appellant's reprisal claim and instructing the parties to provide evidence and argument consistent with these burdens. PFR File, Tab 9. The agency and the appellant have responded. PFR File, Tabs 11-12.

¶41    The agency's response challenges the administrative judge's finding that the appellant met his burden to prove that he engaged in protected activity that was a contributing factor in his removal. *E.g.*, PFR File, Tab 11 at 12-13. The administrative judge found in pertinent part that the deciding official was aware of the appellant's 2013 and 2014 protected activity when he made his removal decision in 2014. ID at 2-3, 16-17. We see no reason to disturb these factual findings on review, given the similarity in the *Warren* standard cited by the administrative judge and the appellant's initial burden under section 1221(e). *Compare Warren*, 804 F.2d at 656-58 (setting forth the *Warren* standard), *with Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 18, 21 (2015) (explaining that the knowledge/timing test allows an employee to demonstrate

that a protected disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within 1 to 2 years of the appellant's disclosures); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (finding that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  Therefore, we decline to consider the agency's new arguments and evidence to the extent that they concern the appellant's prima facie case of reprisal for protected activity.

¶42        However, because the *Warren* standard lacks a similar element, we have considered the agency's response to the extent that it addresses its burden to prove by clear and convincing evidence that it would have taken the same action in the absence of the appellant's protected activity, i.e., the appellant's prior Board appeal alleging whistleblowing retaliation and the subsequent compliance matters.  Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established."    5 C.F.R. § 1209.4(e).    It is a higher standard than preponderant evidence.    *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 43 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).  In determining whether the agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected activity, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in protected activity  but who are otherwise similarly situated.    *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid*, 122 M.S.P.R. 600, ¶ 14.  The Board

must consider all pertinent record evidence in making this determination. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 25 (2012). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). Rather, the Board will weigh the factors together to determine if the evidence is clear and convincing as a whole. *Id.*

¶43 Here, the strength of the agency's evidence in support of its removal action is weak and, as noted above, was in large part prepared well after the fact. As we found above, after considering all of the evidence, the administrative judge correctly found that the agency did not prove either of the charges against the appellant. Furthermore, the agency's delay in taking any sworn witness statements concerning the appellant's alleged actions until more than 5 months after the proposal notice had been issued—in addition to raising serious due process concerns—strongly suggests that: (1) it did not consider the appellant to have engaged in serious misconduct; and (2) the charges were a pretext for reprisal.

¶44 In addition, we find that G.W., who proposed the appellant's removal, and the deciding official both had a strong motive to retaliate. Although G.W. was not involved in the removal that led to the appellant's prior Board appeal, he was aware, as the appellant's supervisor, of the compliance issues that arose. PFR File, Tab 11 at 22-23. He claims that the appellant's conduct, and not his protected activity, was the reason he proposed the appellant's removal. *Id.* However, we find that his claim that "[i]t had never mattered to me that he'd actually made an appeal; it's not like I have no experience with employer-employee matters like that," is less than convincing. *Id.* at 23 (emphasis in original). In particular, G.W.'s inability to prevent the appellant from visiting the Legal Office lobby, which formed part of the basis of charge 2,

reflected on his capacity as a supervisor. *Chavez v. Department of Veterans Affairs*, [120 M.S.P.R. 285](link), ¶¶ 32-33 (2013) (finding that an appellant's disclosures of subordinate employees' wrongdoing created a motive to retaliate on the part of their first- and second-level supervisors). Further, as we have found, this visit was related to the agency's continued noncompliance. As such, it was protected activity. [5 U.S.C. § 2302](link)(b)(9)(A)(i). G.W.'s retaliatory motive is reflected in the statement that what "matter[ed] to me was that [the appellant] acted out, both on the job and over in the Legal Office, in such a manner so as to undermine the morale and discipline of my unit and bring discredit to my organization." PFR File, Tab 11 at 23.

¶45        The deciding official, moreover, had a strong motive to retaliate. He also was the deciding official in the removal action that was the subject of the appellant's prior Board settlement agreement. PFR File, Tab 11 at 19. In addition, he has admitted that he "was aware that [the appellant] was frustrated and unhappy with the legal process regarding his reinstatement," and that his presence in the Legal Office lobby on October 22, 2014, was to seek compliance with the settlement agreement in the prior Board appeal. PFR File, Tab 11 at 19. However, he has not explained what steps, if any, he took to resolve the ongoing compliance issues.

¶46        Finally, the agency claims that it would have removed the appellant in the absence of the protected activity because his removal was the seventh time he received discipline. *Id*. at 26. According to the agency, other employees who were disciplined multiple times were, like the appellant, removed. *Id*. at 25-26. Specifically, the agency asserts that it removed other employees who were disciplined more than five times for charges including "leaving the job without permission," and also removed other employees who were charged with "discourteous conduct" more than five times. *Id*. However, the agency does not provide evidence as to whether or not these employees had, like the appellant, engaged in protected activity, or any specific information as to the nature of their

alleged misconduct. *Id.* Thus, we find that the third *Carr* factor is not a significant factor for the analysis of this case. *Runstrom v. Department of Veterans Affairs*, [123 M.S.P.R. 169](), ¶ 18 (2016).

¶47 Ultimately, after considering the record as a whole, we find that the agency has not proven by clear and convincing evidence that it would have removed the appellant absent his protected activity of filing a prior Board appeal seeking to remedy a violation of [5 U.S.C. § 2302](b)(b)(8) and the subsequent compliance actions. *See* [5 U.S.C. § 2302](b)(b)(9)(A)(i). Therefore, we affirm the initial decision, as modified by this Opinion and Order.

## ORDER

¶48 We ORDER the agency to cancel the appellant's removal and retroactively restore the appellant effective December 18, 2014. *See Kerr v. National Endowment for the Arts*, [726 F.2d 730]() (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶49 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶50 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](b)(b).

¶51    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶52    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶53    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT
REGARDING YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the U.S. Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR
COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. §§ 1214(g)(2), 1221(g)(1)(A)(ii), which you may also be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D). 5 U.S.C. § 1221(f)(3).

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court

has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.

| | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63)
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.